# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

DR. MARK W. STURDY d/b/a )
ROCHESTER VETERINARY CLINIC )
on behalf of itself and a class, )
                                          )
            Plaintiff, )
                                          )
            v. )
                                          )
MEDTRAK EDUCATIONAL SERVICES, LLC, )
ZOETIS, INC., formerly known as PFIZER )
ANIMAL HEALTH; ZOETIS LLC; ZOETIS )
PRODUCTS, LLC;  and JOHN DOES 1-10, )
                                          )
            Defendants. )

## COMPLAINT – CLASS ACTION

## MATTERS COMMON TO MULTIPLE COUNTS

### INTRODUCTION

1.      Plaintiff Dr. Mark W. Sturdy d/b/a Rochester Veterinary Clinic brings this action to secure redress for the actions of defendants MEDtrak Educational Services, LLC, Zoetis, Inc., formerly known as Pfizer Animal Health, Zoetis LLC, and Zoetis Products, LLC, in sending or causing the sending of unlawful fax advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and the common law.

2.      The TCPA expressly prohibits unsolicited fax advertising. Unsolicited fax advertising damages the recipients. The recipient is deprived of its paper and ink or toner and the use of its fax machine. The recipient also wastes valuable time it would have spent on something else. Unsolicited faxes prevent fax machines from receiving and sending authorized faxes, cause wear and tear on fax machines, and require labor to attempt to identify the source and purpose of the unsolicited faxes.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction under 28 U.S.C. §§1331 and 1367. *Brill v.*

*Countrywide Home Loans, Inc.*, 427 F.3d 446  (7th Cir. 2005).

4. Personal jurisdiction exists under 735 ILCS 5/2-209, in that defendants:

   a. Have committed tortious acts in Illinois by causing the transmission of unlawful communications into the state.

   b. Have transacted business in Illinois.

5. Venue in this District is proper for the same reason.

## PARTIES

6. Plaintiff Dr. Mark W. Sturdy d/b/a Rochester Veterinary Clinic is an individual with offices at 130 North John Street, Rochester, Illinois 62563 where he maintains telephone facsimile equipment. He is a resident and citizen of Illinois.

7. Defendant MEDtrak Educational Services, LLC is a limited liability company organized under the law of Pennsylvania with offices at 2200 Renaissance Blvd., Suite 1650, King of Prussia, PA 19406.

8. Defendant MEDtrak Educational Services, LLC provides continuing medical education programs. The programs are regularly funded by pharmaceutical manufacturers.

9. Defendant Zoetis, Inc., formerly known as Pfizer Animal Health, is a Delaware corporation with offices at 100 Campus Drive, Florham Park NJ 07932.

10. Defendant Zoetis LLC is a Delaware limited liability company with offices at 100 Campus Drive, Florham Park NJ 07932. It does business in Illinois. Its registered agent and office is CT Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604. On information and belief, Zoetis, Inc., is a member and manager of Zoetis LLC.

11. Defendant Zoetis Products, LLC is a limited liability company with offices at 100 Campus Drive, Florham Park NJ 07932. It does business in Illinois. Its registered agent and office is CT Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604.

12. On information and belief, Zoetis, Inc., Zoetis LLC and Zoetis Products, LLC have overlapping and common management personnel. For example, Clinton A. Lewis, Jr., is

president of both Zoetis LLC and Zoetis Products, LLC, as well as Executive Vice President and President of U.S. Operations for Zoetis, Inc.

13. Defendants Zoetis, Inc., Zoetis LLC, and Zoetis Products, LLC (collectively, "Zoetis") are engaged in the development, manufacture, distribution and sale of pharmaceutical products intended for animal health.

14. Zoetis is engaged in the manufacture, distribution and sale of drugs for the prevention and treatment of leptospirosis, canine infectious respiratory disease, and Lyme disease. Zoetis produces a vaccine, Vanguard 4-way Lepto, for leptospirosis. Another vaccine, Vanguard High Titer, is intended to prevent canine infectious respiratory disease. Zoetis produces LymeVax®, the first canine Lyme disease vaccine licensed in the United States. Many Zoetis products involve immunology.

15. Defendants John Does 1-10 are other natural or artificial persons that were involved in the sending of the facsimile advertisements described below. Plaintiff does not know who they are.

## FACTS

16. On April 7, 2011, plaintiff received the fax advertisement attached as <u>Exhibit A</u> on his facsimile machine.

17. Discovery may reveal the transmission of additional faxes as well.

18. Defendant MEDtrak Educational Services, LLC is responsible for sending or causing the sending of the faxes.

19. The faxes advertise continuing veterinary medical education seminars on leptospirosis, canine infectious respiratory disease, immunology, and Lyme disease.

20. The seminar and its promotion were funded by Zoetis under its former name of Pfizer Animal Health.

21. The fax refers to "Pfizer Animal Health."

22. Zoetis products are an integral part of the prevention and treatment of the

conditions discussed in the seminar. It is impossible to discuss the subjects without referring to Zoetis products, whether specifically or by description.

23. Zoetis funds educational seminars relating to conditions for which they produce drugs for the purpose of generating sales of those drugs.

24. Zoetis therefore derived economic benefit from the seminars and the promotion of the seminar, including the sending of the faxes.

25. The TCPA and implementing FCC regulations require that all advertising faxes, even those sent with consent or pursuant to an established business relationship, have an opt out notice in prescribed form advising the recipient how to opt out of receiving further faxes.

26. The "opt out" notice (47 U.S.C. §227(b)(1)(C)) must meet these requirements:

**(i) the notice is clear and conspicuous on the first page of the unsolicited advertisement;**

**(ii) the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determine by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful;**

**(iii) the notice sets forth the requirements for a request under subparagraph (E);**

**(iv) the notice includes –**

**(I) a domestic contact telephone and facsimile machine number for the recipient to transmit such a request to the sender; and**

**(II) a cost-free mechanism for a recipient to transmit a request pursuant to such notice to the sender of the unsolicited advertisement; the Commission shall by rule require the sender to provide such a mechanism and may, in the discretion of the Commission and subject to such conditions as the Commission may prescribe, exempt certain classes of small business senders, but only if the Commission determines that the costs to such class are unduly burdensome given the revenues generated by such small businesses;**

**(v) the telephone and facsimile machine numbers and the cost-free mechanism set forth pursuant to clause (iv) permit an individual or business to make such a request at any time on any day of the week; and**

**(vi) the notice complies with the requirements of subsection (d);**

27. Subparagraph (E) states:

>**(E) shall provide, by rule, that a request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if–**
>
>>**(i) the request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;**
>>
>>**(ii) the request is made to the telephone or facsimile number of the sender of such an unsolicited advertisement provided pursuant to subparagraph (D)(iv) or by any other method of communication as determined by the Commission; and**
>>
>>**(iii) the person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine; . . .**

28.  The opt out notice on Exhibit A does not comply.

29.  Defendants are therefore barred from claiming an established business relationship with or consent by any recipient. *Holtzman v. Turza*, 11-3188 and 11-3746, at 3, 2013 WL 4506176 (7th Cir., August 26, 2013); *Nack v. Walburg*, 715 F.3d 680 (8th Cir. 2013).

30.  The programs are conducted on a recurring basis.

31.  On information and belief, Zoetis receives and reviews copies of material promoting the programs.

32.  Defendants either negligently or wilfully violated the rights of plaintiff and other recipients in sending the faxes.

33.  On information and belief, the fax attached hereto were sent as part of a mass broadcasting of faxes to generate attendance at the seminars.

34.  On information and belief, defendants have transmitted similar unsolicited fax advertisements to at least 40 other persons in Illinois.

35.  There is no reasonable means for plaintiff or other recipients of defendants' unsolicited advertising faxes to avoid receiving illegal faxes. Fax machines must be left on and ready to receive the urgent communications authorized by their owners.

## COUNT I – TCPA

36.  Plaintiff incorporates ¶¶ 1-35.

37.     The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine ..." 47 U.S.C. §227(b)(1)(C).

38.     The TCPA, 47 U.S.C. §227(b)(3), provides:

> **Private right of action.**
>
> **A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**
>
> > **(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**
> >
> > **(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**
> >
> > **(C) both such actions.**
>
> **If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

39.     Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result. Furthermore, plaintiff's statutory right of privacy was invaded.

40.     Plaintiff and each class member is entitled to statutory damages.

41.     Defendants violated the TCPA even if their actions were only negligent.

42.     Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

43.     Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent faxes in the form represented by Exhibit A (regardless of the date or location of the program or the identity of the faculty or whether labelled "Zoetis" or "Pfizer Animal Health").

44. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

45. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a. Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

    b. The manner in which defendants compiled or obtained their list of fax numbers;

    c. Whether defendants thereby violated the TCPA;

    d. Whether defendants thereby engaged in unfair acts and practices, in violation of the ICFA.

    e. Whether defendants thereby converted the property of plaintiff.

    f. Whether defendants thereby created a private nuisance.

    g. Whether defendants thereby committed a trespass to chattels.

46. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

47. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

48. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

49. Several courts have certified class actions under the TCPA. *Sadowski v. Med1*

*Online, LLC,* 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *CE Design Ltd. v Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D.Ill. 2009); *Targin Sign Sys. v Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894 (N.D.Ill. 2010); *Garrett v. Ragle Dental Lab, Inc.,* 10 C 1315, 2010 U.S. Dist. LEXIS 108339, 2010 WL 4074379 (N.D.Ill., Oct. 12, 2010); *Hinman v. M & M Rental Ctr.,* 545 F.Supp. 2d 802 (N.D.Ill. 2008); *Clearbrook v. Rooflifters, LLC*, 08 C 3276, 2010 U.S. Dist. LEXIS 72902 (N.D. Ill. July 20, 2010) (Cox, M.J.); *G.M. Sign, Inc. v. Group C Communs., Inc*., 08 C 4521, 2010 U.S. Dist. LEXIS 17843 (N.D. Ill. Feb. 25, 2010); *Holtzman v. Turza*, 08 C 2014, 2009 U.S. Dist. LEXIS 95620 (N.D.Ill., Oct. 14, 2009); *Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642 (W.D.Wash. 2007); *Display South, Inc. v. Express Computer Supply, Inc.,* 961 So.2d 451, 455 (La. App. 1st Cir. 2007); *Display South, Inc. v. Graphics House Sports Promotions, Inc.*, 992 So. 2d 510 (La. App. 1st Cir. 2008); *Lampkin v. GGH, Inc.*, 146 P.3d 847 (Ok. App. 2006); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. (App.) 94, 50 P.3d 844 (2002); *Core Funding Group, LLC v. Young*, 792 N.E.2d 547 (Ind.App. 2003); *Critchfield Physical Therapy v. Taranto Group, Inc.*, 293 Kan. 285; 263 P.3d 767 (2011); *Karen S. Little, L.L.C. v. Drury Inns. Inc.,* 306 S.W.3d 577 (Mo. App. 2010); *Travel 100 Group, Inc. v. Empire Cooler Service, Inc.*, 03 CH 14510 (Cook Co. Cir. Ct., Oct. 19, 2004); *Rawson v. C.P. Partners LLC*, 03 CH 14510 (Cook Co. Cir. Ct., Sept. 30, 2005); *Nicholson v. Hooters of Augusta, Inc.*, 245 Ga.App. 363, 537 S.E.2d 468 (2000).

50. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

- a. Actual damages;
- b. Statutory damages;
- c. An injunction against the further transmission of unsolicited fax advertising;

   d.   Costs of suit;

   e.   Such other or further relief as the Court deems just and proper.

## COUNT II – ILLINOIS CONSUMER FRAUD ACT

51. Plaintiff incorporates ¶¶ 1-35.

52. Defendants engaged in unfair acts and practices, in violation of ICFA §2, 815 ILCS 505/2, by sending unsolicited fax advertising to plaintiff and others.

53. Unsolicited fax advertising is contrary to the TCPA and also Illinois law. 720 ILCS 5/26-3(b) makes it a petty offense to transmit unsolicited fax advertisements to Illinois residents.

54. Defendants engaged in an unfair practice by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to recipients of their advertising.

55. Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.

56. Defendants engaged in such conduct in the course of trade and commerce.

57. Defendants' conduct caused recipients of their advertising to bear the cost thereof. This gave defendants an unfair competitive advantage over businesses that advertise lawfully, such as by direct mail. For example, an advertising campaign targeting one million recipients would cost $500,000 if sent by U.S. mail but only $20,000 if done by fax broadcasting. The reason is that instead of spending $480,000 on printing and mailing his ad, the fax broadcaster misappropriates the recipients' paper and ink. "Receiving a junk fax is like getting junk mail with the postage due". Remarks of Cong. Edward Markey, 135 Cong Rec E 2549, Tuesday, July 18, 1989, 101st Cong. 1st Sess.

58. Defendants' shifting of advertising costs to plaintiff and the class members in this manner makes such practice unfair. In addition, defendants' conduct was contrary to public policy, as established by the TCPA and Illinois statutory and common law.

59. Defendants should be enjoined from committing similar violations in the future.

**CLASS ALLEGATIONS**

60. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date three years prior to the filing of this action, (c) were sent faxes in the form represented by <u>Exhibit A</u> (regardless of the date or location of the program or the identity of the faculty or whether labelled "Zoetis" or "Pfizer Animal Health").

61. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

62. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a.    Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

    b.    Whether defendants thereby violated the TCPA;

    c.    Whether defendants thereby engaged in unfair acts and practices, in violation of the ICFA.

    d.    Whether defendants thereby converted the property of plaintiff.

    e.    Whether defendants thereby created a private nuisance.

    f.    Whether defendants thereby committed a trespass to chattels.

63. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

64. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

65. A class action is the superior method for the fair and efficient adjudication of this

controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

66. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

    a. Appropriate damages;

    b. An injunction against the further transmission of unsolicited fax advertising;

    c. Attorney's fees, litigation expenses and costs of suit;

    d. Such other or further relief as the Court deems just and proper.

## COUNT III – CONVERSION

67. Plaintiff incorporates ¶¶ 1-35.

68. By sending plaintiff and the class members unsolicited faxes, defendants converted to their own use ink or toner and paper belonging to plaintiff and the class members.

69. Immediately prior to the sending of the unsolicited faxes, plaintiff and the class members owned and had an unqualified and immediate right to the possession of the paper and ink or toner used to print the faxes.

70. By sending the unsolicited faxes, defendants appropriated to their own use the paper and ink or toner used to print the faxes and used them in such manner as to make them unusable. Such appropriation was wrongful and without authorization.

71. Defendants knew or should have known that such appropriation of the paper and ink or toner was wrongful and without authorization.

72. Plaintiff and the class members were deprived of the paper and ink or toner, which could no longer be used for any other purpose. Plaintiff and each class member thereby

suffered damages as a result of receipt of the unsolicited faxes.

73.     Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

74.     Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date five years prior to the filing of this action, (c) were sent faxes in the form represented by Exhibit A (regardless of the date or location of the program or the identity of the faculty or whether labelled "Zoetis" or "Pfizer Animal Health").

75.     The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

76.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a.     Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

    b.     Whether defendants thereby violated the TCPA;

    c.     Whether defendants thereby engaged in unfair acts and practices, in violation of the ICFA.

    d.     Whether defendants thereby converted the property of plaintiff.

    e.     Whether defendants thereby created a private nuisance.

    f.     Whether defendants thereby committed a trespass to chattels.

77.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

78.     Plaintiff's claims are typical of the claims of the class members. All are

based on the same factual and legal theories.

79. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

80. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

    a. Appropriate damages;

    b. An injunction against the further transmission of unsolicited fax advertising;

    c. Costs of suit;

    d. Such other or further relief as the Court deems just and proper.

## COUNT IV – PRIVATE NUISANCE

81. Plaintiff incorporates ¶¶ 1-35.

82. Defendants' sending plaintiff and the class members unsolicited faxes was an unreasonable invasion of the property of plaintiff and the class members and constitutes a private nuisance.

83. Congress determined, in enacting the TCPA, that the prohibited conduct was a "nuisance." *Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.*, 401 F.3d 876, 882 (8th Cir. 2005).

84. Defendants acted either intentionally or negligently in creating the nuisance.

85. Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes.

86. Defendants should be enjoined from continuing its nuisance.

**CLASS ALLEGATIONS**

87. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers, (b) who, on or after a date five years prior to the filing of this action, (c) were sent faxes in the form represented by Exhibit A (regardless of the date or location of the program or the identity of the faculty or whether labelled "Zoetis" or "Pfizer Animal Health").

88. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

89. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a. Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

    b. Whether defendants thereby violated the TCPA;

    c. Whether defendants thereby engaged in unfair acts and practices, in violation of the ICFA.

    d. Whether defendants thereby converted the property of plaintiff.

    e. Whether defendants thereby created a private nuisance.

    f. Whether defendants thereby committed a trespass to chattels.

90. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

91. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

92. A class action is the superior method for the fair and efficient adjudication of this

controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

93. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

    a. Appropriate damages;

    b. An injunction against the further transmission of unsolicited fax advertising;

    c. Costs of suit;

    d. Such other or further relief as the Court deems just and proper.

## COUNT V – TRESPASS TO CHATTELS

94. Plaintiff incorporates ¶¶ 1-35.

95. Plaintiff and the class members were entitled to possession of the equipment they used to receive faxes.

96. Defendants' sending plaintiff and the class members unsolicited faxes interfered with their use of the receiving equipment and constitutes a trespass to such equipment. *Chair King v. Houston Cellular*, 95cv1066, 1995 WL 1693093 at *2 (S.D. Tex. Nov. 7, 1995) (denying a motion to dismiss with respect to plaintiff's trespass to chattels claim for unsolicited faxes), vacated on jurisdictional grounds 131 F.3d 507 (5th Cir. 1997).

97. Defendants acted either intentionally or negligently in engaging in such conduct.

98. Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes.

99. Defendants should be enjoined from continuing trespasses.

**CLASS ALLEGATIONS**

100. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date five years prior to the filing of this action, (c) were sent faxes in the form represented by <u>Exhibit A</u> (regardless of the date or location of the program or the identity of the faculty or whether labelled "Zoetis" or "Pfizer Animal Health").

101. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

102. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a. Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

    b. Whether defendants thereby violated the TCPA;

    c. Whether defendants thereby engaged in unfair acts and practices, in violation of the ICFA.

    d. Whether defendants thereby converted the property of plaintiff.

    e. Whether defendants thereby created a private nuisance.

    f. Whether defendants thereby committed a trespass to chattels.

103. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

104. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

105. A class action is the superior method for the fair and efficient adjudication of this

controversy.  The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

106.	Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

    a.	Appropriate damages;

    b.	An injunction against the further transmission of unsolicited fax advertising;

    c.	Costs of suit;

    d.	Such other or further relief as the Court deems just and proper.


/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Michelle R. Teggelaar
Julie Clark
Heather A. Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

**NOTICE OF LIEN AND ASSIGNMENT**

    Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.   All rights relating to attorney's fees have been assigned to counsel.


                 /s/ Daniel A. Edelman
                 Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
  & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)